**Daniel Weintraub - Bar #132111**
**James R. Selth - Bar #123420**
**Elaine V. Nguyen - Bar #256432**
**WEINTRAUB, SELTH & NGUYEN, APC**
**11766 Wilshire Boulevard, Suite 1170**
**Los Angeles, CA 90025**
**Telephone: (310) 207-1494**
**Facsimile: (310) 442-0660**
**Email: elaine@wsrlaw.net**

[Proposed] Attorneys for Debtor
and Debtor-in-Possession,  LITTLE SAIGON SUPERMARKET, LLC

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>LITTLE SAIGON SUPERMARKET, LLC.<br><br>     Debtor and Debtor-In-Possession. | Case No.: 2:17-bk-20227-WB<br>Chapter 11<br><br>**NOTICE OF MOTION AND MOTION FOR ORDER:**<br><br>1. **APPROVING THE SALE OF SUBSTANTIALLY ALL ASSETS OF THE ESTATE FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §363(b)(1) AND (f)(2); AND**<br><br>2. **AUTHORIZING ASSUMPTION AND ASSIGNMENT OF UNEXPIRED COMMERCIAL LEASE**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF PETER NGUYEN, ELAINE NGUYEN, AND KIMHENG "SAM" LAO IN SUPPORT THEREOF**<br>Hearing<br>Date:   September 21, 2017<br>Time:  10:00 a.m.<br>Place:  Courtroom 1375<br>          255 E. Temple St.<br>          Los Angeles, CA 90012 |

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES…………………………………………  7

I.    INTRODUCTION……….………………………………………………………………...  7

II.   FACTUAL BACKGROUND ……………………………………………………………   8

   A. JURISDICTION ……………………………………………………………………........  8

   B. GENERAL BACKGROUND...………………………………………………………….  8

   C. SUMMARY OF ASSETS AND ASSIGNMENT OF THE LEASE…...…………………......   9

   D. SUMMARY OF LIABILITIES……………………………………..…………………….....   10

   E. DEBTOR'S MARKETING EFFORTS ...…………………….…...…………………….......   10

III. PROPOSED SALE…………….. …………………………………………………………   11

   A. PURCHASE PRICE……………………………………………….……….....................  11

   B. THE TERMS OF THE PROPOSED SALE…………...…..……………………………….12

      1.   ASSETS…………………………………………………………………………   12

      2.    LEASE……....…………………………………………………………………   12

      3.   EXCLUDED LIABILITIES...….………………………………………………   12

      4.   TRANSFER OF TITLE…………………………………………………….…   12

      5.   CLOSING…………………………………………………………………….…13

IV.  THE PROPOSED SALE SHOULD BE APPROVED……………………….................................  13

   A.  THE SALE SHOULD BE APPROVED UNDER SECTION 363(b)(1)………………….....  13

   B.  THE MOTION SHOULD BE GRANTED UNDER 11 U.S.C. SECTION 363(f)……………  16

V.  ASSUMPTION AND ASSIGNMENT OF UNEXPIRED LEASE.…………………………………  17

VI. THE COURT HAS THE DISCRETION TO AND SHOULD WAIVE THE FOURTEEN-DAY

PERIOD FOR THE EFFECTIVENESS OF A SALE ORDER………….…………………………  21

VII. CONCLUSION………………………………………………………………………......  23

DECLARATION OF PETER NGUYEN

DECLARATION OF ELAINE NGUYEN

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF AUTHORITIES**

### **Cases**

*Otto Preminger Films. Ltd. v. Qintex Entm't., Inc. (In re Qintex Entm't Inc.), 950 F.2d 1492, 1495 (9ᵗʰ Cir. 1991)*... 13

*In re Anchor Exploration Co., 30 B.R. 802, 808 (Bankr. N.D. Okla. 1983 )* .............................................................. 13

*In re WPRV-TV, 983 F .2d 336, 340 (1ˢᵗ Cir.1993), New Haven Radio, Inc. v. Meister (In re Martin-Trigona), 760 F*

*.2d 1334, 1346 (2d Cir. 1985), Committee of Equity sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F .2d*

*1063, 1069 (2d Cir. 1983): Stephens Indus., Inc., v. McClung, 789 F .2d 386, 390-91 (6ᵗʰ Cir. 1986)*............13

*In re Huntington, Ltd., 654 F .2d 578 (9ᵗʰ Cir. 1981): In re Walter, 83 B.R. 14, 19-20 (9ᵗʰ Cir. B.A.P. 1988)*.......... 14

*Titusville Country club v. Pennbank (In re Titusville Country Club), 128 B.R. 396,399 (Bankr. W.D. Pa. 1991): In re*

*Walte, 83 B.R. at 19-20* ....................................................................................................................................... 14

*Walter v. Sunwest Bank (In re Walter), 83 B.R. 14,19 (9ᵗʰ Cir. B.A.P. 1988)* .............................................................. 14

*In re Walter, 83 B.R. at 19-20, citing In re Continental Air Lines, Inc, 780 F .2d 1223, 1226 (5ᵗʰ Cir. 1986)..* .......... 14

*In re Bowman, 194 B.R. 227, 230 (Bankr. D. Ariz. 1995)* ............................................................................................ 19

*In re AEG Acquisition Corp., 127 B.R. 34, 44 (Bankr. C.D.Cal. 1991), aff'd 161 B.R. 50 (9ᵗʰ Cir. B.A.P. 1993)* ....... 19

*Group of Institutional Investors v. Chicago, Milwaukee, st. Paul & Pacific Railroad Co., 318 U.S. 523, 550 (1953)* 19

*In re FCX, Inc., 60 B.R. 405, 411 (Bankr. E.D.N.Y. 1986)*........................................................................................... 20

*In re DBSI, Inc. 405 b.R. 698, 708 (Bankr. D.Del. 2009* .............................................................................................. 20

*In re Decora Indus., 2002 U.S. Dist. LEXIS 27031, at *23 (D.Del. 2002)*.................................................................. 20

*In re Bygaph, Inc. 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986)* ................................................................................. 20

*Hargrave v. Twp. Of Pemberton (In re Tabone, Inc,) 175 B.R. 855, 858 (Bankr. D.N.J. 1994)* ................................ 21

*Yamaha Motor Corp., USA v. Perry Hollow Mgmt. Co., Inc. (In re Perry Hollow Mgmt. Co., Inc), 297 F. 3d 34, 41*

*(1ˢᵗ Cir. 2002)* .................................................................................................................................................... 22

*Hower v. Molding sys. Eng'g Corp., 445 F .3d 935, 938 (7ᵗʰ Cir. 2006)*...................................................................... 22

*In re Nature Leisure Times, LLC, 59 C.B.B .2d 121, 2007 Bankr. LEXIS 4333 (Bankr. E.D. Tex. Dec. 19, 2007)*..... 22

**Statutes**

11 U.S.C. § 363(b)(1)......................................................................................................... 2

11 U.S.C. § 363(f)(2)......................................................................................................... 2

11 U.S.C. § 365.................................................................................................................. 2

11 U.S.C. § 363 (m) .......................................................................................................... 5

11 U.S.C. §101 et seq......................................................................................................... 8

11 U.S.C. § 363(f)… .......................................................................................................... 16

11 U.S.C. § 3650(2)........................................................................................................... 18

11 U.S.C. § 365(a)............................................................................................................. 18

11 U.S.C. § 365(b)(1)…..................................................................................................... 18

28 U.S.C. §§ 157…....................................................................................................  ….. 8

28 U.S.C. §§ 1334............................................................................................................. 8

28 U.S.C. § 157(b)(2)(A)................................................................................................... 8

28 U.S.C. § 157(b)(2)(O)…............................................................................................... 8

Bankruptcy Code §§ 1107.................................................................................................8

Bankruptcy Code §§ 1108...............................................................................................8

Federal Rule of Bankruptcy Procedure 6004(h) ............................................................ 5

Federal Rule of Bankruptcy Procedure 6006(d) ............................................................ 5

Federal Rule of Bankruptcy Procedure 2002(a) ............................................................ 15

Local Bankruptcy Rule 9013-1(h)…................................................................................ 4

**TO THE HONORABLE JULIA W. BRAND, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE AND ALL OTHER INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that On September 21, 2017 at 10:00 a.m., before the Honorable Julia W. Brand, United States Bankruptcy Judge, in Courtroom 1375, located at 255 East Temple Street, Los Angeles, CA, Little Saigon Supermarket, LLC, a California limited liability company and the debtor and debtor in possession herein ("Debtor"), will hereby move the Court for an Order ("Sale Order") approving the Debtor's *Motion for Order (1) Approving the Sale of Substantially All Assets of the Estate Free and Clear of Liens, Claims, Interests, and Encumbrances Pursuant to 11 U.S.C. § 363(b)(1) and (f)(2); and (2) Authorizing Assumption and Assignment of Unexpired Commercial Lease* ("Motion").

This Motion is brought pursuant to 11 U.S.C. §§ 363 (b)(1) and (f)(2) and 11 U.S.C. §365 on the grounds that the Debtor has determined that it is in the best interest of the estate and its creditors to seek a sale of substantially all of its assets and property ("Assets"), which includes a liquor license and all of Debtor's rights and interests in that certain fifteen (15) year lease ("Lease") with HMZ Retail, LP ("HMZ"), concerning the commercial real property located at 10932 Westminster Ave., Garden Grove, California ("Premises"), to Lucky Taro, Inc. ("Lucky Taro" or "Buyer"), or such party that is the prevailing bidder at the auction ( "Sale"). Lucky Taro is a wholesale produce business founded by Sam Lao and Lily Chang in 2011, which imports exotic produce from all over the world and sells such produce to authorized wholesales and supermarkets through Los Angeles County.

On or about August 28, 2017, the Debtor and Buyer executed an *Asset and Purchase Agreement* ("Purchase Agreement"), providing for the sale and acquisition of the Assets for the

sum of $600,000 ("Purchase Price") all cash at closing, subject to overbid.[1]  To maximize the

value received[2] for the Assets and manage the sale process, the Debtor has proposed certain sale

procedures ("Bid Procedures"), which are subject to a separately filed motion filed on August

29, 2017.

The Debtor has no secured creditors, and its scheduled general unsecured creditor claims

total approximately $370,678.50.  Thus, the Purchase Price is sufficient to (1) cure the acreages

owed to HMZ[3]; and (2) pay in full Debtor's administrative general unsecured creditor claims.

After taking possession of the Premises, the Debtor spent approximately $1,800,000

over a 12-month period improving and renovating the Premises.  As a result of its prime

location and Debtor's improvements to the Premises, the Lease has significant equity.  The

Debtor ceased operations and its only means for repaying creditors and interests holders is

through the Sale.  The Sale allows Debtor to cure the Lease arrearages and make HMZ whole,

pay its creditors in full, and make a distribution to equity.  HMZ has filed a *Motion for Relief

from the Automatic Stay* [Docket #7], set for September 19, 2017 in an effort to go to trial on its

---

[1]  In addition to the indebtedness arising from operations, Debtor's operating agreement provides a liquidation preference for its Class B members.  The Class B members are EB-5 investors, such that the EB-5 investors are entitled to receive full payment of their investments before the Class A members receive any distribution.  The EB-5 investments are as follows:
-    $500,000 owed to Class B EB-5 investor Huy Dinh Le; and
-    $500,000 owed to Class B EB-5 investor Vo Thi Hong Truc

[2]  The Debtor has received four (4) other verbal offers and a second written offer which the proposed buyer withdrew after being threatened by Ms. Jasmine Nguyen, one of the members of the Debtor's management company, who Debtor suspects may be working to secure the Lease for her own financial benefit.

[3]  Landlord asserts arrears of $114,650.35, which is inclusive of attorneys' fees and costs. Landlord is also holding a $63,000 deposit belonging to Debtor's estate, which has not been credited towards the arrearage amount.

unlawful detainer complaint and terminate the Lease.  If this happens, the value of the Debtor's estate will crater and creditors will likely recover nothing.  As the Debtor has no operating capital, Debtor is unable to pay administrative rent other than through the Sale.  The Lease has significant equity and Debtor believes HMZ seeks to terminate the Lease in order to capture all such equity for itself to the prejudice of creditors and the estate.

The Motion is based upon the Bid Procedures Motion, the Notice of Motion filed concurrently herewith, the *Notice of Sale of Estate Property* filed with the Clerk of the Court, the Memorandum of Points and Authorities and Declarations of Peter Nguyen[4] ("Peter Declaration"), Elaine Nguyen ("Elaine Declaration"), and KimHeng "Sam" Lao attached hereto and all pleadings, papers and records on file with the Court and other evidence and argument, oral or documentary, as may be presented to the Court at the time of the hearing on the within Motion.

**PLEASE TAKE FURTHER NOTICE,** that if you wish to object to or oppose the relief sought by the Motion, you must appear at the hearing and file and serve any responsive pleading on Debtor's attorney no later than **September 7, 2017**, which is fourteen (14) days prior to the hearing.  Pursuant to Local Bankruptcy Rule 9013-1(h), papers not timely filed and served may be deemed by the court to be consent to the granting or denial of the motion, as the case may be.

//

//

//

---

[4]  For purposes of clarification only, Elaine V. Nguyen of Weintraub, Selth & Nguyen APC, is not related to Peter Nguyen, or Jasmine Nguyen.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order:

1. Approving the Motion and authorizing, pursuant to a sale order in substantially the same form attached to the Peter Declaration as **Exhibit "1"** ("Sale Order"), the sale of the Assets as defined herein, to Buyer or to a bidder with a higher, better or otherwise best bid for the Assets (which such highest and best bidder may be Buyer or a qualified third party overbidder, and is hereinafter referred to as the "Successful Bidder"), pursuant to the terms of that certain Purchase Agreement attached as **Exhibit "2"** to the Peter Declaration, or if not to Buyer pursuant to its existing bid, then to an overbidder pursuant to terms that are similar to the Purchase Agreement;

2. Authorizing, with appropriate findings as set forth in the Sale Order, the sale of the Assets to the Successful Bidder, free and clear of all claims, liens, security interests, charges, encumbrances, adverse interests of any kind and all other liabilities, including, without limitation, successor liabilities pursuant to Section 363 of the Bankruptcy Code;

3. Finding that the Successful Bidder has acted in good faith and is entitled to the protections of 11 U.S.C. ´363(m);

4. Authorizing the Debtor to assume and assign the Lease to the Successful Bidder;

5. With appropriate findings of the Court regarding the adequacy of notice to creditors and parties in interest relating to the within Motion;

6. Waiving the fourteen (14) day stay of order provided in Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure; and

//

7.      Granting such other and further relief as the Court deems just and appropriate.

Dated:  August 30, 2017                            WEINTRAUB, SELTH & NGUYEN, APC

By /s/ Elaine V. Nguyen
Daniel J. Weintraub
James R. Selth
Elaine V. Nguyen
[Proposed] Attorneys for Debtor and
Debtor-in-Possession,
LITTLE SAIGON SUPERMARKET, LLC

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Debtor hereby moves this Court for an order authorizing the Debtor to sell substantially all of its assets to Lucky Taro, in accordance with the *Asset and Purchase Agreement* ("Purchase Agreement") attached to the Peter Declaration as **Exhibit "2",** and to authorize the assumption and assignment by Lucky Taro of Debtor's Lease[5] of the commercial premises located at 10932 Westminster Ave., Garden Grove, California ("Premises"). The Debtor has been marketing its assets for sale since June 2017 and the purchase price of $600,000 ("Purchase Price"), all cash at Closing, represents the highest and best signed written offer received by the Debtor. Lucky Taro has deposited the sum of $21,000 with Viva Escrow, Inc., as a deposit towards the Purchase Price of the Assets and agreed to a liquidated damage of $121,000 in the event it is approved by the Court and does not close the Sale.

The Purchase Price represents fair consideration for the estate and puts the estate in a position to (1) cure the arrears on the Lease; (2) pay all unsecured creditors in full; and (3) provide a distribution to the Class B EB-5 investors.

The Debtor has no operating capital and no post-petition financing to pay its obligations or administrative rent. On August 22, 2017, HMZ filed a *Motion for Relief from the Automatic Stay* to proceed with an unlawful detainer [Docket # 7]. Should HMZ regain possession of the premises and the Lease expire, the Debtor will lose its most significant asset, and the value of the Debtor's Assets will crater causing the Debtor's general unsecured creditors to receive nothing on their claims.

//

//

//

---

[5] A copy of the Lease is attached to the Peter Declaration as **Exhibit "3".**

## II.

## FACTUAL BACKGROUND

### A. Jurisdiction

On August 20, 2017 ("Petition Date"), the Debtor commenced the instant bankruptcy case ("Bankruptcy Case") by filing an emergency petition under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* ("Bankruptcy Code").  The Debtor is serving as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. The Court has jurisdiction over this case under 28 U.S.C. §§ 157 and 1334.  These matters constitute core proceedings under 28 U.S.C. § 157(b)(2)(A) and (O).

### B. General Background

As set forth in the Declaration of Peter T. Nguyen[6] ("Peter Declaration"), Little Saigon Supermarket, LLC, is a California limited liability company formed on August 19, 2015.  Sun Valley Management, LLC ("SVM")[7], is the Debtor's Manager and the Debtor's sole Class A member.  Huy Dinh Le and Vo Thi Hong Truc are Class B members of the Debtor by virtue of their investment under the U.S. Citizenship and Immigration Services EB-5 Immigrant Investor Program ("EB-5").  The Debtor has no other managers or members.

The Debtor was formed in order to develop and operate a Vietnamese supermarket. On or about November 11, 2015, the Debtor entered into a fifteen (15) year lease ("Lease") with HMZ Retail, LP ("HMZ"), concerning the commercial real property located at 10932 Westminster Ave., Garden Grove, California.  Thereafter, the Debtor spent approximately one year and $1,800,000 in cash designing, developing, renovating and building out the space for a Vietnamese supermarket.  On December 3, 2016, the Debtor opened the "Farmer's Garden

---

[6] For purposes of clarification only, Elaine V. Nguyen of WSN is not related to Peter Nguyen or Jasmine Nguyen.

[7] The members of SVM are Richard Chhor ("Richard"), Peter Nguyen ("Peter"), Jasmine Nguyen ("Jasmine"), Ngoc Vu Hoang, and Huy Le.  The managers of SVM are Richard, Peter and Jasmine.

Supermarket" ("Market").  The Westminster address is a central location for the Vietnamese community in Orange County.  The Debtor's mission was to provide fresh produce and Vietnamese goods catering to a younger generation of shoppers.

The Market opened in December 2016 and initially operated at a profit, generating gross sales in its first month of $724,179.47.  However, gross sales began to drop and along with it, the Market's profitability.  Having difficulty meeting payroll and falling behind to vendors, on June 7, 2017, at a Managers meeting of SVM, at which all the Managers were present with counsel, the Managers voted to, among other things,

- Close the Market and begin liquidation;

- Designate Peter as the Debtor's Authorized Representative; and

- File a Bankruptcy.

On June 26, 2017, the Market closed its doors.

**C. Summary of Assets and Assignment of the Lease**

Since terminating the Market's operations, the Debtor has received several offers to purchase its assets, the most significant, of which are the Debtor's rights and interest under the Lease.  To date, the Debtor has received approximately four (4) verbal and one (1) written offer to acquire Debtor's assets and its interest in the Lease.

Following the cessation of its business, the Debtor fell behind in payments due under the Lease.  HMZ thereafter served the Debtor with a 3-day Notice to Quit or Pay Rent and ultimately with an Unlawful Detainer action.

The Lease has adequate equity to enable the Debtor to cure the Lease arrearage, repay all creditors in full and provide a return to the EB-5 investors, who will likely not receive their "Green Cards" due to the failure of the Market.[8]

---

[8] The immigrant status of an EB-5 investor is dependent upon the business in which they invest creating ten (10) permanent jobs per investor.  Because the Market has failed to operate, no such jobs exist.

**D.  Summary of Liabilities**

As reflected in the Debtor's schedules, the Debtor has the following liabilities:

- $370,678.50 in general unsecured vendor/trade debt; and

- $51,650.40 in purported arrears owed to HMZ after application of $63,000
  deposit HMZ is currently holding that belongs to the estate.[9]

In addition to the indebtedness arising from operations, Debtor's operating agreement provides a liquidation preference for the Class B EB-5 investors, such that the EB-5 investors are entitled to receive full payment of their investments before the Class A members receive any distribution.  The EB-5 investments are as follows:

- $500,000 owed to Class B EB-5 investor Huy Dinh Le; and

- $500,000 owed to Class B EB-5 investor Vo Thi Hong Truc

As set forth in the Peter Declaration, the Debtor has no secured creditors.  Attached to the Elaine Declaration as **Exhibit "4"** is a "Search Certificate" from the California Secretary of State, certifying that there are no active financing statements, tax liens, attachment liens, or judgment liens as of August 17, 2017.

**E.  Debtor's Marketing Efforts**

On or about June 15, 2017, the Debtor engaged Amigos Realty ("Broker"), to market and sell the Assets.  The Debtor selected Raymond Tang of Amigos Realty because he had previously sold a market in the area.  During his pre-petition engagement, Mr. Tang presented the Debtor with two offers in the $300,000 range.  Management believed that these offers were well below market.  The Debtor does not intend to retain Broker as it has secured much more substantial offers which management believes better reflects market value and allow for full repayment of creditor claims.  in this current proposed sales transaction.

The Debtor's efforts have been successful.  Richard and Peter reached out to an owner of seven (7) supermarkets in the Los Angeles and Orange County area.  This individual made an offer to purchase the Assets for $940,000.  However, Jasmine threatened litigation against this

---

[9]  Debtor has not reviewed an accounting of the arrears.

individual and the offer was revoked.  Debtor is working to revive this offer with assurances of Bankruptcy Court approval of the sale.

Lucky Taro has signed an asset purchase agreement and paid a deposit towards consummation of a sale, and agreed to a liquidated damage of $121,000 in the event it is approved by the Court and does not close the Sale.  Lucky Taro is a creditor of the Debtor in the amount of $4,488.00 and one of the Debtor's vendors.  Neither the Debtor, nor any of its members or managers, have any other relationship with Lucky Taro or Lucky Taro's owners and officers Sam Lao and Lily Chang, other than as disclosed herein.  Lucky Taro is in the wholesale produce business, importing exotic Asian produce and selling this produce to authorized wholesalers and supermarkets throughout Los Angeles county.  Lucky Taro intends to operate a supermarket with the purchased Assets.

The Debtor will continue to market a sale of the Assets until the Sale Hearing and reach out to all entities and individuals that previously expressed interest or made offers.

### III.

### PROPOSED SALE

#### A.    Purchase Price

As set forth in the Purchase Agreement, and subject to approval of the Bankruptcy Court and overbids, Buyer has offered to purchase the Assets for Six Hundred Thousand Dollars ($600,000) (the "Purchase Price"), all cash at Closing, which shall be allocated as follows:

- The amount required to cure the Lease arrearage ("Cure Payment"), conditioned on the simultaneous assumption and assignment of the Lease to Buyer; and

- The balance of the Purchase Price remaining after payment of the Cure Payment shall be deposited into Debtor's attorney client trust account for disbursement to creditors and equity holders pursuant to a Chapter 11 Plan.

On August 25, 2017, Buyer wired a Deposit of $21,000, to Viva Escrow, Inc., pending the closing of the Sale.  If the transaction closes as contemplated, the Deposit shall be credited to the Purchase Price at Closing.  If the Buyer is the winning bidder and fails to fulfil its obligations herein, the Deposit made by Buyer shall be retained by the Debtor's estate and

Buyer shall be responsible for an additional $100,000 as liquidated damages.

**B.    The Terms of the Proposed Sale**

The following is a summary of the proposed material terms of the sale of the Property to Buyer pursuant to the Purchase Agreement.  To the extent of any inconsistency, the Purchase Agreement controls:

1.    **ASSETS**.  Buyer shall purchase the Debtor's interest in the unexpired Retail Lease dated November 11, 2015 ("Lease") with HMZ Retail, LP ("Landlord") for commercial property located at 10932 Westminster Ave., Garden Grove, CA 91843, Debtor's liquor license, good will, tangible and intangible assets, and all assets thereof as contained in **Schedule "A"** attached to the Purchase Agreement.

2.    **LEASE**.  Subject to Bankruptcy Court approval, the Debtor shall assume and assign the Lease to Buyer.  Buyer understands the Sale is subject to the Court's approval of the Debtor's assumption and assignment of the Lease to Buyer or Landlord approval of the assignment of the Lease to Buyer.  Debtor makes no representation of any intention of whether Landlord will either approve or deny Buyer's assumption of the lease.

3.    **EXCLUDED LIABILITIES**.  Notwithstanding anything herein to the contrary, and other than the liabilities and obligations arising from the Lease, the Parties expressly acknowledge and agree that the Assets shall be sold to Buyer, free and clear of all liens, claims, interests and encumbrances, and Buyer shall not assume, be obligated to pay, perform or otherwise discharge or in any other manner be liable or responsible for any liabilities, indebtedness, and obligations of the Debtor, whether existing on the closing date or arising thereafter.

4.    **TRANSFER OF TITLE**. Following the entry of the Sale Order and on or before the Closing, the Debtor shall execute and deliver a bill of sale with respect to the Assets and all such other good and sufficient instruments of sale, transfer and conveyance consistent with the terms and provisions of this Agreement, which forms shall be provided by Buyer and reasonably acceptable to the Debtor.  Title to and possession of the Assets shall immediately pass to Buyer upon the Closing, on the Closing Date.

5.    **CLOSING**.  Subject to the terms and conditions hereof, the closing of the sale of the Assets (the "Closing") shall take place within 5 days of the entry of a Bankruptcy Court order approving the Sale.

**IV.**

**THE PROPOSED SALE SHOULD BE APPROVED**

**PURSUANT TO 11 U.S.C. §363(b)(1) AND 11 U.S.C. §363(f)**

A review of the applicable cases interpreting Sections 363(b)(1) and (f) of the Bankruptcy Code and, in light of the aforementioned facts, indicates that a sound basis exists for Court approval of this sale.

**A.    The Sale Should be Approved Under Section 363(b)(1)**

Section 363(b)(1) of the Bankruptcy Code empowers a debtor in possession to "sell . . . other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(1). The authority to sell assets conferred upon a debtor by Section 363(b)(1) "include[s] a sale of substantially all the assets of an estate." Otto Preminger Films, Ltd. v. Qintex Entm't., Inc. (In re Qintex Entm't, Inc.), 950 F.2d 1492, 1495 (9th Cir. 1991); *see also*, In re Anchor Exploration Co., 30 B.R. 802, 808 (Bankr. N.D. Okla. 1983) (court should have wide latitude to approve sale under Section 363(b)).  A bankruptcy court's power to authorize a sale under Section 363(b) is to be exercised at the court's discretion. In re WPRV-TV, 983 F.2d 336, 340 (1st Cir. 1993), New Haven Radio, Inc. v. Meister (In re Martin-Trigona), 760 F.2d 1334, 1346 (2d Cir. 1985), Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1069 (2d Cir. 1983); Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390-91 (6th Cir. 1986).

In the Ninth Circuit, "cause" exists for authorizing a sale of estate assets if it is in the best interest of the estate and a business justification exists for authorizing the sale.  In re

Huntington, Ltd., 654 F.2d 578 (9th Cir. 1981); In re Walter, 83 B.R. 14, 19-20 (9th Cir. B.A.P.

1988).

In evaluating the propriety of a sale of property of the estate, courts have evaluated

whether: (1) there be a sound business reason for the sale; (2) accurate and reasonable notice of

the sale be given to interested parties; (3) the price to be paid is adequate i.e., fair and

reasonable; and (4) the parties to the sale have acted in good faith.  Titusville Country Club v.

Pennbank (In re Titusville Country Club), 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); see also,

In re Walter, 83 B.R. at 19-20.

An examination of each of the above four factors shows that the sale as proposed herein

should be approved.

1.  Sound Business Justification.

The Ninth Circuit Bankruptcy Appellate Panel in Walter v. Sunwest Bank (In re

Walter), 83 B.R. 14,19 (9th Cir. B.A.P. 1988) adopted a flexible case-by-case test to determine

whether the business purpose for a proposed sale justifies disposition of property of the estate

under Bankruptcy Code section 363(b) as follows:

> Whether the proffered business justification is sufficient depends on the case. As the
> Second Circuit held in Lionel, the bankruptcy judge should consider all salient factors
> pertaining to the proceeding and, accordingly, act to further the diverse interests of the
> debtor, creditors and equity holders, alike. He might, for example, look to such relevant
> factors as the proportionate value of the asset to the estate as a whole, the amount of
> elapsed time since the filing, the likelihood that a plan of reorganization will be
> proposed and confirmed in the near future, the effect of the proposed disposition on
> future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis
> any appraisals of the property, which of the alternatives of use, sale or lease the proposal
> envisions and, most importantly perhaps, whether the asset is increasing or decreasing in
> value. This list is not intended to be exclusive, but merely to provide guidance to the
> bankruptcy judge.

In re Walter, 83 B.R. at 19-20, citing In re Continental Air Lines, Inc. 780 F.2d 1223, 1226 (5th
Cir. 1986).

14

The facts of this case support the Debtor's business decision to consummate a sale and is in the best interest of the Debtor's creditors.  The Debtor has ceased operations and does not have any operating capital or post-petition financing with which to resume operations or to pay creditors.  If the Debtor does not consummate a sale promptly, the Debtor risks losing its rights under the Lease.  If this occurs, the Debtor will have little, if anything to sell and creditors will receive pennies on the dollar, if anything.

In contrast, the sale as proposed herein will provide sufficient cash to pay all general unsecured creditors in full, with a distribution to Class B members.  Thus, the Debtor submits that the sale is justified by a sound business purpose.

2.   Accurate and Reasonable Notice.

Pursuant to §363(b)(1), a debtor in possession must give notice of any sale of property of the estate.  Transactions not in the ordinary course of business are generally governed by Federal Rule of Bankruptcy Procedure 6004.  Rule 6004(a) refers, in turn, to Rule 2002(a), which requires a twenty-one (21) day notice period for any "proposed use, sale, or lease of property of the estate other than in the ordinary course of business, unless the court for cause shown, shortens the time…" FRBP 2002(a).

Concurrently herewith, the Debtor is mailing notice to all creditors and parties in interest of the proposed sale.  Thus, the Debtor has satisfied the notice requirements.

3.   Adequate Price.

Despite serious expressions of interest, Lucky Taro is the only prospective buyer that has signed an asset purchase agreement, and paid a deposit towards the consummation of a sale.  Concurrently with the filing of this Motion, the Debtor is filing and serving to all creditors and parties a *Notice of Sale of Estate Property* and has filed a Sales Procedures Motion, so that the

sale is subject to overbid.  Overbidding, will increase the likelihood that the estate will receive the highest and best price for the Assets.

    4.  <u>Good Faith.</u>

Finally, the Sale is proposed in good faith.  The "good faith" requirement focuses principally on the element of special treatment of a debtor's insiders in the sale transaction. <u>Industrial Valley Refrig. And Air Cond. Supplies, Inc</u>, 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987). Here, the Buyer is not an insider or affiliate of the Debtor, and the negotiations between the Buyer and Debtor regarding the proposed Sale were at arms-length and no collusion was involved.  Lucky Taro is a creditor ($4,488.00) of the Debtor, having previously supplied goods to the Debtor's Market.  The Debtor, its members, and managers do not have any other relationship with the company.  The Purchase Agreement was negotiated with the goal of maximizing recovery to creditors and interest holders.

## B.  The Motion Should Be Granted Under 11 U.S.C. Section 363(f)

Section 363(f) of the Bankruptcy Code describes the circumstances under which a debtor in possession may sell property of the estate free and clear of any interest of third parties in such property.  Section 363(f) provides, in pertinent part:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. §363(f).

Section 363(f) of the Bankruptcy Code was drafted in the disjunctive.  Thus, a debtor need only meet the provisions of one of the five subsections of section 363(f) in order for a sale of property to be free and clear of all liens, claims and interests.  Here, the Debtor submits that the requirements of section 363(f) are met because as set forth in the Peter Declaration there are no secured creditors.  Moreover, the "Search Certificate" attached to the Elaine Declaration as **Exhibit "4"** from the California Secretary of State, certifies that there are no active financing statements, tax liens, attachment liens, or judgment liens as of August 17, 2017.

In any event all, creditors will receive notice of the proposed sale and will have an opportunity to respond to this Motion.  Moreover, if any other individual or entity believes that it has a claim or interest in the Assets, it will have an opportunity to assert such claim or interest in response to this Motion.  Therefore, based upon the authority set forth above, the Debtor requests that the Court approve the Sale free and clear of all liens, claims, encumbrances and/or interests of any parties who may assert such liens, claims, encumbrances and/or interests against the Assets and who do not file a timely objection to the proposed sale by deeming all such parties to have consented to the proposed sale pursuant to Section 363(f)(2) of the Bankruptcy Code.

## V.

## ASSUMPTION AND ASSIGNMENT OF UNEXPIRED LEASE

As required by the Purchase Agreement[10], and in order to enhance the value to the Debtor's estate, the Debtor requests the approval of the assumption and assignment of the Lease to the Buyer or the Successful Bidder upon the closing of the Sale.

---

[10] The assignment of the Lease is essential to the proposed Sale.

Section 365(f) of the Bankruptcy Code provides, in pertinent part, that:

The trustee may assign an executory contract or unexpired lease of
the debtor only if —

(A) the trustee assumes such contract or lease in accordance
with the provisions of this section; and

(B) adequate assurance of future performance by the assignee
of such contract or lease is provided, whether or not there has been
a default in such contract or lease.

11 U.S.C. § 3650(2).

Under section 365(a), a debtor "subject to the court's approval, may assume or reject any

executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  Section 365(b)(1), in

turn, codifies the requirements for assuming an unexpired lease or executory contract of a

debtor, providing that:

(b)(1) If there has been a default in an executory contract or
unexpired lease of the debtor, the trustee may not assume such
contract or lease unless, at the time of assumption of such contract
or lease, the trustee –

(A) cures, or provides adequate assurance that the trustee will
promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee
will promptly compensate, a party other than the debtor to such
contract or lease, for any actual pecuniary loss to such party
resulting from such default; and

(C) provides adequate assurance of future performance under such
contract or lease.

11 U.S.C. § 365(b)(1).

Thus, pursuant to Bankruptcy Code section 365(b)(1), the assumption of a lease requires

a debtor to: (a) cure any existing defaults under such agreements; (b) compensate all non-debtor

parties to such agreements for any actual pecuniary loss resulting from the defaults; and (c)

provide adequate assurance of future performance under the contract or lease.  11 U.S.C. §

365(b)(1); *see also* In re Bowman, 194 B.R. 227,230 (Bankr.D.Ariz.1995), In re AEG

Acquisition Corp., 127 B.R. 34, 44 (Bankr.C.D.Cal.1991), *aff'd* 161 B.R. 50 (9th Cir.

B.A.P.1993).

1.   Debtor will Cure Existing Defaults Under the Lease and Compensate Landlord for
      Actual Pecuniary Loss

Here, Debtor will cure all defaults under the Lease and compensate the Landlord for any

damages by paying the Landlord's allowed claim in full through escrow, or in the event of a

dispute as to the cure or damage claim, providing adequate assurance of cure and compensation

by reserving such sum pending the resolution of all disputes.  Pre-petition the Debtor received

an e-mail from Landlord's counsel stating that the arrears were $114,650.35,[11] which amount

included Landlord's attorney's fees and costs.  Thus, the Purchase Price of $600,000 is more

than sufficient to cure any and all defaults under the Lease and to compensate the Landlord for

its actual pecuniary loss (attorney's fees).  In addition, Landlord is currently holding a $63,000

deposit belonging to the Debtor.

Although section 365 of the Bankruptcy Code does not set forth standards for courts to

apply in determining whether to approve a debtor in possession's decision to assume an

executory contract or unexpired lease, courts have consistently applied a "business judgment"

test when reviewing such a decision. *See, e.g.,* Group of Institutional Investors v. Chicago,

Milwaukee, St. Paul &Pacific Railroad Co., 318 U.S. 523, 550 (1953).  A debtor satisfies the

---

[11]  The Debtor has not received an accounting of this amount and thus has not reviewed the
validity of this claim amount.

"business judgment" test when it determines, in good faith, that assumption of an executory

contract will benefit the estate and the unsecured creditors.  In re FCX, Inc., 60 B.R. 405, 411

(Bankr. E.D.N.Y. 1986).

Here, since the Lease has significant equity and no buyer, can reasonably be expected to

consummate a sale at this price which does not include the Lease, it is an appropriate exercise of

the Debtor's business judgment to seek to assume and assign the Lease to facilitate the Sale

because the proceeds of the sale will allow Debtor to propose a Plan which pays all general

unsecured creditors in full, and provides a significant distribution to Class B members.  Thus,

the Debtor submits that it is sound business judgment to assume the Lease.

2.  Adequate Assurance

The meaning of "adequate assurance of future performance" depends on the facts and

circumstances of each case, but should be given a "practical, pragmatic construction."  In re

DBSI, Inc. 405 B.R.698,708 (Bankr. D.Del.2009); *see also* In re Decora Indus., 2002 U.S. Dist.

LEXIS 27031, at *23 (D.Del. 2002) ("[A]dequate assurance falls short of an absolute guarantee

of payment").  Adequate assurance may be provided by demonstrating the assignee's financial

health and experience in managing the type of enterprise or property assigned.  *See, e.g.,* In re

Bygaph, Inc. 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding that adequate assurance is

present when prospective assignee of lease from debtor has financial resources and has

expressed willingness to devote sufficient funding to business to give it strong likelihood of

success).

The Debtor requests that if the Landlord does not object to the Sale to the Buyer or the

Successful Bidder, that the Court deem such lack of objection as consent to the assumption and

assignment of its Lease under section 365 of the Bankruptcy Code.  *See* Hargrave v. Twp. Of

<u>Pemberton (In re Tabone, Inc.)</u>  175 B.R. 855,858 (Bankr. D.N.J. 1994) (by not objecting to sale

motion, creditor deemed to consent).

If an objection is received, the Debtor proposed in the its Bid Procedures that objections

should be resolved as follows:

> **<u>Resolution and Adjudication of Objections</u>**. Upon filing of an objection by HMZ,
> the Debtor and/or Buyer will contact HMZ to attempt to consensually resolve any
> timely served objection. If the Debtor and/or the Buyer are unable to resolve an
> objection in response to the Assignment Notice, (i) to the extent such objections relate
> to the adequate assurance of future performance by the Buyer or Successful Bidder
> (each an "<u>Adequate Assurance Objection</u>"), such objections will be heard at the Sale
> Hearing or (ii) to the extent such objections relate to a Cure Amount, such objections
> will be heard at a hearing to be scheduled by the Court at the Sale Hearing. In the
> event an objection relates **solely** as to a Cure Amount, then HMZ will be deemed to
> consent to the assumption of the Lease and its assignment to the Buyer,
> notwithstanding such objection.

If necessary, the Buyer or the other Successful Bidder shall provide its financials

demonstrating its ability to provide adequate assurances in the form of future rent payments to

landlord HMZ prior to, or at the Sale Hearing.  In addition, Debtor reserves the right to provide

evidence at the hearing, including testimony from the Buyer establishing Buyer's adequate

assurance of future performance under the Lease.

**VI.**

**<u>THE COURT HAS THE DISCRETION TO AND SHOULD WAIVE THE
FOURTEEN-DAY PERIOD FOR THE EFFECTIVENESS OF A SALE ORDER</u>**

Rule 6004(h) of the Federal Rules of Bankruptcy Procedure provides: "An order

authorizing the use, sale, or lease of property other than cash collateral is stayed until the

expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr.

P. 6004(h).

The court can eliminate or reduce the 14-day stay period upon a showing that there is a sufficient business need to necessitate an immediate closing within the 14-day period and the interests of any objecting party, taking into account the likelihood of success on appeal, are sufficiently protected.   10-6004 Collier on Bankruptcy P 6004.11.  In <u>Yamaha Motor Corp., USA v. Perry Hollow Mgmt. Co., Inc. (In re Perry Hollow Mgmt. Co., Inc.)</u>, 297 F.3d 34, 41 (1st Cir. 2002), the court affirmed the bankruptcy court's decision to waive the waiting period of Rule 6004(g) (now (h)). The appellate court found that the bankruptcy court acted properly within its discretion to waive the stay where the evidence at the hearing established that the sale price was reasonable, the buyer was ready to complete the sale the next day and there would be a charge for storage if there were a delay.

Similarly, in <u>Hower v. Molding Sys. Eng'g Corp.</u>, 445 F.3d 935, 938 (7th Cir. 2006) , the court affirmed the elimination of the stay where the debtor was down to its last five dollars, had dozens of employees who needed to be paid and a purchaser who made $250,000 available to keep operations going. In <u>In re Nature Leisure Times, LLC</u>, 59 C.B.C.2d 121, 2007 Bankr. LEXIS 4333 (Bankr. E.D. Tex. Dec. 19, 2007), the court noted that it was appropriate to eliminate the waiting period under Rule 6004(h) because the estate had negative cash flow and the trustee should not be required to continue to operate the estate with third party moneys.

Similarly, here the need to proceed sooner with the sale outweighs any objecting party's interests.  The Debtor does not have any operating capital with which to pay the Landlord post-petition rent and risks losing the premises and Lease if a sale is not consummated quickly. Accordingly, the Debtor request that the Court order that the sale may be effectuated immediately upon entry of the order.

## VII.

## <u>CONCLUSION</u>

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order:

1. Approving the Motion and authorizing, pursuant to a sale order in substantially the same form attached to the Peter Declaration as **Exhibit "1"** ("<u>Sale Order</u>"), the sale of the Assets as defined herein to Buyer or to a bidder with a higher, better or otherwise best bid for the Assets (which such highest and best bidder may be Buyer or a qualified third party overbidder, and is hereinafter referred to as the "<u>Successful Bidder</u>"), pursuant to the terms of that certain Purchase Agreement attached as **Exhibit "2"** to the Peter Declaration, or if not to Buyer pursuant to its existing bid, then to an overbidder pursuant to terms that are similar to the Purchase Agreement;

2. Authorizing, with appropriate findings as set forth in the Sale Order, the sale of the Assets to the Successful Bidder, free and clear of all claims, liens, security interests, charges, encumbrances, adverse interests of any kind and all other liabilities, including, without limitation, successor liabilities pursuant to Section 363 of the Bankruptcy Code;

3. Finding that the Successful Bidder has acted in good faith and is entitled to the protections of 11 U.S.C. ´363(m);

4. Authorizing the Debtor to assume and assign the Lease to the Successful Bidder;

5. With appropriate findings of the Court regarding the adequacy of notice to creditors and parties in interest relating to the within Motion;

6. Waiving the fourteen (14) day stay of order provided in Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure; and

7. Granting such other and further relief as the Court deems just and appropriate.

8.

Dated: August 30, 2017                    WEINTRAUB, SELTH & NGUYEN, APC


By /s/ Elaine V. Nguyen
   Daniel J. Weintraub
   James R. Selth
   Elaine V. Nguyen
   [Proposed] Attorneys for Debtor and
   Debtor-in-Possession,
   LITTLE SAIGON SUPERMARKET, LLC

1

## DECLARATION OF PETER NGUYEN

2   I, Peter Nguyen, declare as follows:

3       1.      I am an individual over the age of eighteen and am a Manager of Sun Valley

4   Management, LLC ("SVM").  SVM is the Manager of Little Saigon Supermarket, LLC, the

5   debtor and debtor in possession herein ("Debtor").  Except as otherwise stated herein, each of

6   the facts contained in this declaration is based on my personal knowledge and my review of the

7   books and records of the Debtor kept in the ordinary course.  If called as a witness, I could and

8   would competently testify thereto.

9       2.      On August 20, 2017 ("Petition Date"), Debtor commenced the instant

10  bankruptcy case ("Case") by filing an emergency petition under Chapter 11 of the United States

11  Bankruptcy Code, 11 U.S.C. § 101 et seq. ("Bankruptcy Code").

12      3.      Attached hereto as **Exhibit "1"** is a proposed Sale Order.

13      4.      Attached hereto as **Exhibit "2"** is the signed Asset and Purchase Agreement

14  ("Purchase Agreement") between the Debtor and Lucky Taro, Inc. ("Lucky Taro" or "Buyer").

15      5.      As set forth in the Purchase Agreement, and subject to approval of the

16  Bankruptcy Court and overbids, Buyer has offered to purchase the Assets for Six Hundred

17  Thousand Dollars ($600,000) (the "Purchase Price"), **all cash at Closing.**  On August 25, 2017,

18  Buyer wired a Deposit of $21,000, to Viva Escrow, Inc., pending the closing of the Sale.  If the

19  transaction closes as contemplated, the Deposit shall be credited to the Purchase Price at

20  Closing.

21      6.      Attached hereto as **Exhibit "3"** is a true and correct copy of the Lease.

22      7.      We have been marketing the Assets since June 2017, and every potential buyer

23  we've spoken to is interested in the purchase due to the location and the Lease.  The offers I

24  have received for the Assets range between $300,000 - $940,000.  However, the individual who

25  made the offer for $940,000.00 revoked its offer after Jasmine threatened litigation against this

26  individual and the offer was withdrawn.

27  **A.    General Background**

28      8.      Little Saigon Supermarket, LLC, is a California limited liability company formed

on August 19, 2015.  SVM , is the Debtor's Manager and the Debtor's sole Class A member.

9.      The Debtor was formed in order to develop and operate a Vietnamese supermarket. On or about November 11, 2015, the Debtor entered into the Lease with HMZ for the Premises. Thereafter, the Debtor spent approximately one year and $1,800,000 in cash designing, developing, renovating and building out the space for a Vietnamese supermarket.  On December 3, 2016, the Debtor opened the "Farmer's Garden Supermarket" ("Market").

10.      The Westminster address is a central location for the Vietnamese community in Orange County.  The Debtor's mission was to provide fresh produce and Vietnamese goods catering to a younger generation of shoppers.

11.      The Market opened in December 2016 and initially operated at a profit, generating gross sales in its first month of $724,179.47.  However, gross sales began to drop and along with it, the Market's profitability.

12.      Having difficulty meeting payroll and falling behind to vendors, on June 7,2017, at a Managers meeting of SVM, at which all the Managers were present with counsel, the

13.      Managers voted to, among other things

-      Close the Market and begin liquidation;

-      Designate me as the Debtor's Authorized Representative; and

-      File a Bankruptcy.

14.      On June 26, 2017, the Market closed its doors.

**B.      Summary of Assets and Assignment of the Lease**

15.      Since terminating the Market's operations, the Debtor has received several offers to purchase its Assets.  The most valuable of Debtor's Assets are its rights and interests under the Lease.  To date, the Debtor has received approximately four (4) verbal and one (1) written offer to acquire the Assets and its interest in the Lease.

16.      Following the cessation of its business, the Debtor fell behind in payments under the Lease.   HMZ thereafter served the Debtor with a 3-day Notice to Quit or Pay Rent and ultimately with an Unlawful Detainer action.  The Debtor filed this Case in order to preserve the equity in the Lease for creditors and the estate.

17.     The Lease has adequate equity to enable the Debtor to cure the Lease arrearage, repay all creditors in full and provide a return to the EB-5 investors, who will likely not receive their "Green Cards" due to the failure of the Market.

**C.     Summary of Liabilities**

18.     I have reviewed the Debtor's books and records and the Debtor has no secured creditors.

19.     The Debtor has the following liabilities:

- $370,678.50 in general unsecured vendor/trade debt; and

- $51,650.40 in purported arrears owed to HMZ after application of $63,000 deposit HMZ is currently holding that belongs to the estate.

20.     In addition to the indebtedness arising from operations, Debtor's operating agreement provides a liquidation preference for the EB-5 investors, such that the EB-5 investors are entitled to receive full payment of their investments before the Class A members receive any distribution.  The EB-5 investments are as follows:

- $500,000 owed to Class B EB-5 investor Huy Dinh Le; and

- $500,000 owed to Class B EB-5 investor Vo Thi Hong Truc

**D.     Debtor's Marketing Efforts**

21.     On or about June 15, 2017, the Debtor engaged Amigos Realty ("Broker"), to market and sell the Assets.  I selected Raymond Tang of Amigos Realty because he had previously sold a market in the area.  During his pre-petition engagement, Mr. Tang presented the Debtor with two offers in the $300,000 range.  We believed that these offers were well below market and terminated the relationship with Mr. Tang.  The Debtor does not intend to retain Broker as we have secured much more substantial offers which management believes better reflects market value and allow for full repayment of creditor claims.

22.     Richard and I have reached out to an owner of seven (7) supermarkets in the Los Angeles and Orange County area.  This individual made an offer to purchase the Assets for $940,000.  However, Jasmine threatened litigation against this individual and the offer was withdrawn.  Richard and I are working to revive this offer with assurances of Bankruptcy Court

approval of the sale.

23.      Lucky Taro has signed an asset purchase agreement, paid a deposit to escrow towards consummation of a sale and agreed to a liquidated damage of $121,000 in the event it is approved by the Court and does not close the Sale.  Lucky Taro is a scheduled creditor ($4,488.00) of the Debtor and one of the Debtor's vendors.

24.      Neither I, the Debtor, nor any of the Debtor's members or managers, have any other relationship with Lucky Taro or Lucky Taro's owners and officers Sam Lao and Lily Ch, other than as disclosed herein.  Lucky Taro is in the wholesale produce business, importing exotic Asian produce and selling this produce to authorized wholesalers and supermarkets throughout Los Angeles County.  Lucky Taro intends to operate a supermarket with the purchased Assets.

25.      The Debtor and I will continue to market a sale of the Assets until the Sale Hearing and reach out to all entities and individuals that previously expressed interest or made offers.

26.      The Debtor has no operating capital or cash with which to resume operations or pay administrative rent to HMZ.  Thus, I believe a sale must close quickly in order to preserve the value of the Assets and the equity in the Lease.

27.      HMZ is holding a $63,000 deposit belonging to the Debtor.  Pre-petition, Landlord's counsel sent an email asserting arrears of Landlord of $114,650.35, which includes inclusive of attorneys' fees and costs.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 29th  day of August 2017, at _08/30/2017_____, California.

 

 

_____

Peter Nguyen

## DECLARATION OF ELAINE V. NGUYEN

I, Elaine V. Nguyen, declare and state as follows:

      1.     I am an attorney duly admitted to practice in the State of California and before the United States District Court for the Central District of California and an attorney of Weintraub, Selth & Nguyen, APC ("WSN"), counsel of record for Little Saigon Supermarket, LLC the debtor and debtor in possession herein.  Except as otherwise stated herein, each of the facts contained in this declaration is based on my personal knowledge and my review of the books and records of WSN kept in the ordinary course.  If called as a witness, I could and would competently testify thereto.

      2.     On or about August 17, 2017, I made a search request with the California Secretary of State for any financing statements filed against the Debtor.  Attached hereto as **Exhibit "4"** is the "Search Certificate" I received from the California Secretary of State certifying that there are no active financing statements, tax liens, attachment liens, or judgment liens as of August 17, 2017.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 29th  day of August 2017, at Los Angeles, California.

                /s/ Elaine V. Nguyen

                Elaine Nguyen

## DECLARATION OF SAM LAO

I, Kimheng "Sam" Lao, declare as follows:

1.        I am an individual over the age of eighteen and am the founder and President of Lucky Taro, Inc. ("Lucky Taro").  Except as otherwise stated herein, each of the facts contained in this declaration is based on my personal knowledge and my review of the books and records of the Debtor kept in the ordinary course.  If called as a witness, I could and would competently testify thereto.

2.        My wife and I founded Lucky Taro in 2011.  Lucky Taro is a whole sale produce company, importing a variety of Asian exotic fruits and vegetables from around the world to the Los Angeles and Orange County markets.  My wife and I also own Lucky Express Transportation, Inc., where we operate a fleet of semi-trucks to deliver Lucky Taro's produce to customers from our distribution center in Fresno.

3.        I have wanted to open a retail supermarket under the Lucky Taro brand for some time and have worked to identify a suitable space for the market.  On or about August 17,2017, Richard Chhor and Peter Nguyen of Little Saigon Supermarket, LLC, approached me and asked if Lucky Taro was interested in purchasing the company.

4.        I have reviewed the books and records of the Debtor, reviewed its personal property assets, toured the premises which it leases from HMZ Retail, LP at 10932 Westminster Ave., Garden Grove, California ("Premises").  My primary interest is in the Lease and I attribute very little value to the remaining assets.

5.        On August 28, 2017, I executed the *Asset and Purchase Agreement* ("Purchase Agreement") on behalf of Lucky Taro, a true and correct copy of which is attached to the Declaration of Peter Nguyen as **Exhibit 2**.  On August 25, 2017,  I caused Lucky Taro to wire a deposit of $21,000, to Viva Escrow, Inc., pending the closing of the Sale.  If the transaction closes as contemplated, the deposit shall be credited to the Purchase Price at Closing.

//

//

6.      Lucky Taro is not interested in purchasing the Debtor's other assets, unless it also acquires the Debtor's interest in the Lease as I believe the other assets have little value.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 30 th day of August 2017, at _Los Angeles_ , California.

Kimheng "Sam" Lao

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

11766 Wilshire Blvd., Ste. 1170, Los Angeles, CA 90025

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND MOTION FOR ORDER:  (1) APPROVING THE SALE OF SUBSTANTIALLY ALL ASSETS OF THE ESTATE FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §363(b)(1) AND (f)(2); AND (2) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF UNEXPIRED COMMERCIAL LEASE MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF PETER NGUYEN, ELAINE NGUYEN, AND KIMHENG "SAM" LAO IN SUPPORT THEREOF**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **August 30, 2017**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **LESLIE A BOWER**   leslie@labowerlaw.com
- **Alvin Mar**   alvin.mar@usdoj.gov, kenneth.g.lau@usdoj.gov;dare.law@usdoj.gov;kelly.morrison@usdoj.gov
- **Elaine Nguyen**   elaine@wsrlaw.net, melissa@wsrlaw.net;vinnet@ecf.inforuptcy.com;elayna@wsrlaw.net
- **James R Selth**   jim@wsrlaw.net, jselth@yahoo.com;melissa@wsrlaw.net;vinnet@ecf.inforuptcy.com
- **United States Trustee (LA)**   ustpregion16.la.ecf@usdoj.gov

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **August 30, 2017,**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**X See attached list**

Jeremy Suiter, Esq.
Stradling Yocca Carlson & Rauth
660 Newport Center Drive, Ste 1600
Newport Beach, CA 92660

Sam Lao
Lucky Taro,Inc.
1884 E 22nd St
Los Angeles, CA 9005

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **August 29, 2017**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**Personal delivery to Chambers of Julia W. Brand, United States Bankruptcy Court, Los Angeles Division**

| 8/30/2017 | Elayna Fenelon | /s/ Elayna Fenelon |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Label Matrix for local noticing
0973-2
Case 2:17-bk-20227-WB
Central District of California
Los Angeles
Wed Aug 30 15:06:21 PDT 2017

HMZ RETAIL, LP
10872 Westminster Avenue Suite 202
Garden Grove, CA 92843-4982

Little Saigon Supermarket, LLC
4843 Doreen Avenue
Temple City, CA 91780-4140

Los Angeles Division
255 East Temple Street
Los Angeles, CA 90012-3332

A.N Wholesales
13896 Harbor Blvd. #5
Garden Grove, CA 92843-4045

Abhing Corporation
25550 Pellissier Place
City of Industry, CA 90601

Catherine Huang
1300 Carpe Myrtle
Azusa, CA 91702-6289

City of Industry Supermarket, LLC
21580 Valley Blvd.
Walnut, CA 91789-5241

Coca Cola
P.O. Box 740214
Los Angeles, CA 90074-0214

Employment Development Dept.
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

Franchise Tax Board
Bankruptcy Section, MS: A-340
P.O. Box 2952
Sacramento, CA 95812-2952

H.C. Foods Co., Ltd.
P.O. Box 911429
Los Angeles, CA 90091-1238

HMZ Retail, LP
c/o Packard Management Corp
9555 Chesapeake Drive
San Diego, CA 92123-6301

Hans Meats Inc.
8504 Firestone Blvd. #203
Downey, CA 90241-4926

Harvest Meat Company, Inc.
P.O. Box 58608
Los Angeles, CA 90058-0608

Hudson Butcher Supply
7425 Lampson Avenue
Garden Grove, CA 92841-2903

Hung Nguyen
8581 Orangewood Blvd.
Garden Grove, CA 92841-1519

In Suk Suh
c/o Troy S. An Esq.
3600 Wilshire Blvd., Suite 1801
Los Angeles, CA 90010-2626

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

J. Enterprises
4611 Sheila Street
Commerce, CA 90040-1003

JFC International Inc.
7101 E. Slauson Avenue
Commerce, CA 90040-3622

Jasmine Nguyen
15751 Brookhurst St. #101
Westminster, CA 92683-7567

Lamb & Kawakami LLP
333 South Grand Avenue, Ste 4200
Los Angeles, CA 90071-1567

Leslie A. Bower
Bower & Associates
PO Box 11748
Newport Beach, CA 92658-5040

Lucky Taro
1884 East 22nd Street
Los Angeles, CA 90058-1034

Minh's Meat
P.O. Box 26649
Santa Ana, CA 92799-6649

Nam Nguyen
14128 Fairgrove Avenue
La Puente, CA 91746-1707

New Japan International
6464 Flotilla Street
Commerce, CA 90040-1712

Pepsi Beverage Company
6261 Caballero Blvd.
Buena Park, CA 90620-1123

Planet Coffee Roasters, Inc.
217 S. Ninth Avenue
La Puente, CA 91746-3310

Quoc Viet Food, Inc.
9353 Bolsa Avenue, Suite K #D60
Westminster, CA 92683-5951

Rain Forest Produce
P.O. Box 21346
Los Angeles, CA 90021-0346

Richard Chhor
7667 Steddom Dr.
Monterey Park, CA 91755

Sea Win Inc.
526 Stanford Avenue
Los Angeles, CA 90013-2123

(p)CALIFORNIA STATE BOARD OF EQUALIZATION
ACCOUNT REFERENCE GROUP MIC 29
P O BOX 942879
SACRAMENTO CA 94279-0029

United States Trustee (LA)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017-3560

YHS Trading
755 Epperson Drive
City of Industry, CA 91748-1335

Elaine Nguyen
Weintraub & Selth APC
11766 Wilshire Blvd Ste 1170
Los Angeles, CA 90025-6553

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

State Board Of Equalization
P.O. Box 942879
Sacramento, CA 94279-0001

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Courtesy NEF

End of Label Matrix
Mailable recipients    37
Bypassed recipients     1
Total                  38